# CHARLESTON.

HARDMAN LUMBER COMPANY v. KEYSTONE MANUFACTURING COMPANY.

Submitted April 27, 1920.     Decided May 11, 1920.

1. SALES—*Buyer Accepting Offer Known to be Made Under Mistake Cannot Recover Damages.*

   One who accepts an offer for the sale of goods, which from the circumstances surrounding the parties at the time, or from the gross inadequacy of the price quoted, he must know is made under a misapprehension of some material fact, and which offer is repudiated by the party making the same as soon as such mistake is discovered, will not be entitled to re-

cover damages in case of the failure of the party making the offer to furnish the goods in accordance therewith. (p. 407).

2. SAME—*Buyer Held Entitled to Recover Damages Measured by Difference Between Contract Price and the Part of the Goods He Bought in the Market.*

Where in an action to recover damages for the breach of a contract to furnish a certain number of cars of lumber plaintiff shows that he purchased a part of such lumber in the market at the lowest price obtainable, and that he manufactured the remainder thereof himself, but is not able to state with reasonable certainty the cost to him of so manufacturing the same, but does show that such cost was in excess of the contract price, the proper measure of his recovery is the difference between the contract price and the price paid by him in the market for so much thereof as was procured in that way. (p. 408).

3. SAME—*Damages for Seller's Breach is Difference Between Contract Price of Goods and Cost to Buyer of Manufacturing Them Exclusive of Manufacturer's Profit.*

Where a seller of goods refuses to furnish the same in accordance with the terms of a contract, and the purchaser procures the material and manufactures them himself, his measure of damages for the seller's breach of the contract is the difference between the contract price and the cost to him of producing the goods, not including any manufacturer's profit. (p. 408).

(LYNCH, JUDGE, absent).

Error to Circuit Court, Randolph County.

Action by the Hardman Lumber Company against the Keystone Manufacturing Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Samuel T. Spears,* for plaintiff in error.
*Talbott & Hoover,* for defendant in error.

RITZ, JUDGE:

This action was instituted to recover damages from the defendant because of its failure to furnish certain lumber to the plaintiff, in accordance with the terms of a purported contract set up and relied upon. To a judgment awarding the plaintiff the damages claimed defendant prosecutes this writ of error.

Both the plaintiff and the defendant are engaged in the lumber business at the city of Elkins. It appears that in March, 1916, the plaintiff had an inquiry from a customer to furnish twenty carloads of crating strips of certain dimensions. Just prior to this time this customer had procured a carload of these strips from the plaintiff, which the plaintiff had in turn procured from the defendant. The plaintiff was not in position to fill the order for twenty cars itself, so its president took the order to the president of the defendant and submitted it to him for the purpose of procuring his price for the material, with a view to then making a quotation to the plaintiff's customer. Defendant's president quoted a price of twenty dollars per thousand feet, and plaintiff's president says that upon getting this quotation he quoted a price to his customer, and that upon the acceptance of the same he thereupon accepted the offer made to him by the defendant. It appears that the bill upon which the defendant was requested to quote a price specified in it the dimensions of the strips to be furnished, and after each specification of dimensions under the head, "feet per hundred pieces," was specified the number of feet which each hundred pieces should measure. These strips were to be five-eighths of an inch in thickness, and this calculation of the number of feet contained in each hundred pieces was based upon the actual measurement of the strips, while the defendant made its quotation upon the basis of surface measurement. It will thus be seen that there would be only five-eighths as much lumber in the shipment, according to the basis contained in the bill submitted, as there would be upon the basis of surface measurement. The defendant showed that the car which had been shipped just previously was billed and paid for upon the basis of surface measurement; that the custom in the business was to base quantities upon surface measurements in all cases where the lumber was under one inch in thickness; and further, that this was the rule of the Hardwood Lumbermen's Association, of which both parties are members. The defendant's president testifies that when this order was submitted to him he presumed that the measurements would be made in the ordinary way; that he did not make the calculations to see upon what basis the quantities stated in the bill were ascertained; in fact, that he paid little attention to this part of the order. He acted

upon the assumption that surface measurement was indicated because the plaintiff's president who brought the bill to him said nothing to the contrary. That was the custom in the business; that was the rule of the Association to which both of them belonged; that was the basis upon which the car which had just been furnished had been measured and paid for; and, further, the price which he quoted, to-wit, twenty dollars per thousand feet, was so inadequate upon the basis of actual measurement as to reasonably notify the plaintiff's president that he was quoting upon the basis of surface measurement, his statement being that the reasonable price for the lumber upon the basis of actual measurement would have been twenty-eight or twenty-nine dollars a thousand instead of twenty dollars. Upon the cross-examination of the president of the plaintiff, who was its principal witness in the case, the defendant attempted to show by him that he knew at the time that the plaintiff was quoting the price upon the basis of surface measurement, but the court declined to allow cross-examination along this line, upon the theory, as stated in the rulings, that if the defendant's president read, or had the opportunity to read the order, and could tell therefrom that the measurement was actual measurement, such evidence was immaterial. It cannot be doubted that if the defendant's president had made the calculation he could have ascertained that the order was upon the basis of actual measurement; and upon the submission of the case to the jury the court instructed it that if the defendant's president read the order, or had the opportunity of reading the same, then the defendant was bound thereby, and the plaintiff was entitled to recover the difference between the contract price and what it paid for the material in the market. This action of the court constitutes the basis of the principal assignment of error.

There is no doubt but that when an unequivocal offer is made by one party to another, which offer is in good faith accepted, a contract is formed, and both parties are bound thereby, but there is another rule which seems to be equally as well astablished, and that is, that where the party making the offer makes a mistake, and the price at which the articles are offered is so out of proportion to the real value thereof that the other party must

know that the offer is made by mistake, or the circumstances which surround the parties at the time are such as to give notice to the party receiving the offer that it has been made under a misapprehension upon the part of the other party of some material fact; or the party to whom the offer is made actually does know that such offer is made through a misapprehension of a material fact, no contract will arise from the acceptance thereof in case the party making the offer, upon discovering his mistake, repudiate the same. Williston on contracts, § 94; 6 R. C. L., title, "Contracts," § 42; *Hudson Structural Steel Co.* v. *Smith & Rumery Co.,* (Me.) 43 L. R. A. (N. S.) 654; *Steinmeyer* v. *Schroeppel,* 226 Ill. 9, 10 L. R. A. (N. S.) 114, and note; *Cunningham Mfg. Co.* v. *Rotograph Co.,* 30 App. D. C. 524, 15 L. R. A. (N. S.) 368; *Central of Georgia Ry. Co.* v. *Gortatowsky,* 123 Ga. 366; *Germain Fruit Co.* v. *Western Union Telegraph Co.,* 137 Calif. 598, 59 L. R. A. 575. The sole question here is, therefore, whether or not there was sufficient evidence to take the case to the jury upon that question. First, it may be stated that the defendant was denied the right to cross-examine the president of the plaintiff, to whom the offer was made, touching his knowledge of the circumstances under which the same was made, upon the ground that such evidence was immaterial. This was error. Defendant should have been allowed to bring out all of the facts obtainable tending to show that the plaintiff's officer knew, or that the circumstances under which the offer was made were such as that he ought to have known, that it was made under a mistake as to some of its terms. The facts shown, as before stated, are that just a few days before this offer was made, the defendant had furnished the plaintiff a similar car of material, and that it was billed and paid for upon the basis of surface measurement; that the price quoted was, according to defendant's contention, so grossly inadequate as to be notice to the plaintiff that it was quoted under a misapprehension of some of the facts; that the rules of the Hardwood Lumbermen's Association, and the custom among dealers in this class of material, were to sell the same on surface measurement. Considering all these facts together, we are of the opinion that the court erred in not submitting this question to the jury, and if the jury believed that at

the time the offer was made it was made in the belief that the material was to be billed on the basis of surface measurement, and that the circumstances surrounding the parties at the time were such that the plaintiff knew this was the belief of the defendant, or the price quoted was so inadequate as to furnish substantial ground for such belief, then the jury's verdict should have been that there was no valid contract, and the defendant was not bound by the plaintiff's acceptance of its offer.

Another error assigned is to the action of the court in instructing the jury upon the measure of damages. It appears that of the twenty cars the plaintiff bought thirteen cars in the market at the lowest price at which the same could be obtained; that it procured the materials and manufactured the other seven cars itself, but was unable to show with reasonable certainty the cost to it of producing these seven cars. The court directed the jury that in ascertaining the damages they could not consider the seven cars manufactured by the plaintiff, but should limit their recovery to the difference in the contract price and the purchase price of the thirteen cars bought in the market. This holding is criticised upon the ground that it might be that the seven cars were procured at very much less than the contract price, in which case the plaintiff should not be allowed to recover all of the loss it sustained on the thirteen cars, but only the loss it sustained on all of the twenty cars. We do not think the court's instruction in this regard was wrong for the reason that while it does not appear with reasonable certainty just how much the plaintiff expended in manufacturing the seven cars, it does sufficiently appear that this cost to it was more than the contract price, and the court's instruction, therefore, denying the plaintiff any recovery at all on account of these seven cars sufficiently protected the defendant, even assuming that the contract for the twenty cars was an entire contract. The inability of the plaintiff to prove with reasonable certainty the cost of producing these cars, under the court's holding, denied it any right to recover any damages on account of the defendant's failure to furnish the same, even though it did appear that their cost was something in excess of the contract price. It therefore appears that the plaintiff, if there was a con-

tract, was damaged at least to the extent to which the court allowed a recovery.

The plaintiff, however, cross assigns error to the action of the court in not allowing it to recover on account of the seven cars manufactured by it the difference between the market price and the contract price of this material, its contention being that while it produced this material itself it was enttled to charge the same to the defendant at the market price. It seems to be that where a party, placed in the situation in which the plaintiff was in this case, undertakes to manufacture the material itself, the measure of damages will be the difference between the cost to it of the material plus the cost of manufacturing, but without any manufacturer's profits. 2 Sutherland on Damages, § 652, p. 2287; 2 Sedgwick on Damages, § 734, p. 1534; *Forsyth & Ingram* v. *Mann Bros.,* 68 Vermont, 116, 32 L. R. A. 788; *Pittsbuhg Mfg. Co.* v. *West End Sheet Metal Co.,* 201 Pa. St. 150. There was no error, therefore, in the action of the court denying the plaintiff the right to recover on account of the seven cars, upon its failure to prove with reasonable certainty the cost to it of manufacturing the same.

Complaint is also made by the defendant that the plaintiff was not required to produce the invoices and checks showing the amounts that it actually paid for the lumber purchased by it to take the place of that to be supplied upon the contract. It appears that these papers were seasonably demanded, and the absence of the invoices accounted for by showing that they had been lost or mislaid, and could not be produced, but the checks and vouchers were neither produced, nor their absence accounted for, and the court refused to require the plaintiff to produce the same. This was a very material element in the case. In fact the plaintiff's measure of recovery was based upon what it paid for this lumber in the market. The invoices, vouchers and checks covering the transaction certainly were the best evidence of this fact, and the court should have required their production.

Complaint is also made of the action of the court in not requiring the plaintiff's bookkeeper, in answer to a question asked by the defendant, to state the price at which the plaintiff resold this material to its customer. Upon the theory the court

below took of this case his ruling was right, but upon the theory which we find to be the correct one, his ruling in this regard was wrong. The price at which the plaintiff resold this material might be a very material circumstance indicating that it knew that the defendant's offer was made by mistake. If it should appear that it sold the material at a price largely in advance of that at which the defendant offered to furnish it, it might indicate, or at least be a circumstance tending in that direction, that the real value of such material was known to the plaintiff to be much greater than the price at which it was offered by the defendant. In this view the court should have permitted the question to be answered.

Our conclusion is to reverse the judgment complained of, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*