# CHARLESTON.

WHITAKER-GLESSNER COMPANY v. SUBURBAN BRICK COMPANY.

Submitted September 7, 1920. ' Decided September 14, 1920.

1. EVIDENCE—*Contract of Sale Held Ambiguous on its Face, So That Evidence to Explain Subject Matter Was Admissible.*

   The provision in an order for bricks, accepted by the recipient, calling for a specific number of bricks to be supplied, at a certain rate per month, beginning on the first day of a month specified, but to be shipped only when notified by the purchaser, and also saying in a note appended addressed to the seller, "If unable to fill any part of it at time stated notify us at once, stating when and what part will be shipped," renders the contract so accepted ambiguous on its face, and the seller is entitled on the trial of an action on such contract by the purchaser against him for damages for the alleged breach thereof, to show in evidence to the jury the correspondence

between the parties and all other negotiations leading up to the contract, to explain the subject matter of the contract and to relieve the contract of its ambiguity. (p. 625).

2. ASSUMPSIT, ACTION OF—*No Recovery on Common Counts Unless Claim Includes Matters Recoverable Thereunder.*

In an action in assumpsit for damages upon an executory contract recovery can not be had on the common counts, though they accompany a special count, unless the claim of the plaintiff includes matters properly recoverable under such common counts. (p. 627).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Ohio County.

Action by the Whitaker-Glessner Company against the Suburban Brick Company. Judgment for plaintiff, motion for new trial denied, and defendant brings error.

*Reversed and remanded.*

*J. J. O'Brien* and *D. B. Evans,* for plaintiff in error.
*Guy R. C. Allen* and *T. S. Riley,* for defendant in error.

MILLER, JUDGE:

The errors assigned and relied on by defendant below, plaintiff in error, involve the correctness of the rulings of the court on the evidence, the instructions to the jury given and refused, and the motion of the defendant to set aside the verdict and award it a new trial.

The declaration contains a special count and the common counts in assumpsit, and the cause of action pleaded and relied on in general terms was for damages for the alleged breach by defendant of its contract to manufacture and deliver to plaintiff 275,000 paving blocks. The trial resulted in a verdict and judiment for plaintiff for $646.25.

Plaintiff undertook to prove the contract pleaded by the introduction of the following letters between it and defendant, and the court sustained its objection to the evidence written and oral, offered by defendant intended to or having the effect to vary or explain the terms of the contract alleged to have been concluded by the correspondence offered in evidence by the plaintiff.

Omitting the headings of the letters, this correspondence is as follows:

"Whitaker-Glessner Co.                              Order No. 191
        Beech Bottom Works.
                          Wheeling, W. Va., April 20th, 1917.
To Suburban Brick Company,
        Moundsville, W. Va.
Ship to Whitaker-Glessner Co.,
        Beech Bottom, Brooke County, W. Va.
        Our Order Number Must Appear On Your Invoice.

To supply 40,000 to 50,000 No. 2 Payers per month, beginning May 1, 1917, and continue at the above rate until our wants are supplied. Maximum quantity to be 275,000. Whitaker-Glessner Company to advise 30 days in advance, when supply is to be discontinued.

PRICE: F. O. B. cars Beech Bottom, W. Va. $13.65 per M.

DELIVERY: Shipment to be made when notified. (Subject to freight advance).

NOTE: The above confirms phone conversation with your Mr. Adams under even date. Brick to be supplied as per samples submitted.

Address reply to Whitaker-Glessner Co., City Bank Bldg., Wheeling, W. Va.

                              Whitaker-Glessner Co.
                              By W. J. Stoop."

"NOTE: Please acknowledge receipt of this order. If unable to fill any part of it at time stated notify us at once stating when and what part will be shipped. Send bill lading stating route, rate and weight with each invoice."

The answer of the defendant is as follows:

                          "Moundsville, W. Va., April 21, 1917.
Whitaker-Glessner Co.,
Wheeling, W. Va.
Gentlemen:

We are in receipt of your order 191 for No. 2 Paving Block to be shipped to yourselves at Beech Bottom at $13.65 per M. We note you failed to state on the order that this price was subject

to any advance that may be granted in the present freight rate and we have noted same on your order.

Thanking you for the business, we are,

Yours truly,

Suburban Brick Co.

A. B. Adams, Sales Mgr."

The reply of the plaintiff to this letter is in these words:

"Wheeling, W. Va., April 23, 1917.

Suburban Brick Company,

Moundsville, W. Va.

Gentlemen:

Replying to your letter of the 21st relative to our order 191, wish to advise the price of $13.65 per M., f. o. b. cars Beech Bottom, W. Va., for No. 2 Paving Block is based on present freight rates and should the freight be increased this advance will be taken care of by the Whitaker-Glessner Company.

Yours truly,

Whitaker-Glessner Co.

By W. J. Stoop."

As establishing a breach of the contract as alleged plaintiff was allowed to introduce the subsequent correspondence between the parties, beginning with a letter of defendant dated May 31, 1917, written before plaintiff had given defendant any notice or shipping directions for the brick, as follows:

"Owing to present War Conditions, shortage of labor and other unavoidable causes, we are compelled to shut down our Moundsville Plant. Hence, as it is very doubtful if we will be in position to make satisfactory delivery of your order No. 191, we are returning same herewith. As soon as present conditions alleviate we will resume operations and if we are in position to ship you anything in the late summer we shall be glad to do so."

Following this letter is one of plaintiff to defendant, dated June 2, 1917, returning Order No. 191, and notifying the latter that it would expect fulfillment of the order, and wanting to know at once defendant's intention in the premises; another of June 13, calling for reply to the one of June 2, one of defendant to plaintiff of June 13, advising that it regarded its letter of

May 31st a sufficient answer, and repeating its substance; another of plaintiff to defendant in reply, of June 29, asking for a more definite answer, and advising defendant that it was expected to supply promptly at least 80,000 No. 2 Pavers on account of May and June deliveries and in July and the following months forty to fifty thousand per month, and if not plaintiff would purchase same from other parties and charge it with any increased price; and lastly a letter from plaintiff to defendant, of July 24, 1917, advising that on account of its failure to ship the May and June quotas of brick, plaintiff had been compelled to purchase from other parties at an advanced price, and would render invoices for the difference in price, and demanding the quotas of brick for July, August, September and October.

The remainder of plaintiff's evidence admitted relates to the omission of defendant to furnish any of the bricks referred to in the correspondence, the purchase of other bricks in the market to take their place, the prices paid, and the damage sustained as claimed, amounting to $1,231.88.

The claim and theory of the defense was that the correspondence relied on by plaintiff did not cover the whole of the contract; that the order of the plaintiff of April 20, 1917, represented as having been accepted by defendant by its letter of April 21, with modification and suggestion as shown therein by plaintiff's letter of April 23, was ambiguous on its face and explainable only by the previous correspondence and the whole of the telephone conversation referred to, the evidence of all which was upon plaintiff's objection wholly excluded from the jury. The rulings of the court on this evidence were made the subject of defendant's several bills of exception, bringing it into the record for review by us on this writ.

The point is urged here that defendant's letter of April 21, was not an unqualified acceptance of plaintiff's order No. 191, but a mere acknowledgment of the receipt thereof. Properly construed we think it was intended to be and was in fact an acceptance of the order. But the effect of the acceptance depends on a proper construction of the order itself.

In the first place, the order calls for supplying plaintiff with

40,000 to 50,000 bricks, beginning May 1, 1917, shipment to be made when notified. No shipping orders had been given up to May 31, and indeed no specific shipping orders appear to have been given defendant at any time. In plaintiff's letter to defendant of June 29, 1917, it is stated that May and June deliveries were then overdue, but no shipping orders appear to have been then or thereafter given, as expressly stipulated in the order. The stipulation that the supply was to commence May 1, and then that shipments were only to begin when notified, are rather inconsistent provisions. But this is not all that renders the order ambiguous on its face. The provision of the note appended, which constituted a part of the order, says: "If unable to fill any part of it at time stated notify us, stating when and what part will be shipped." What does this mean? We must give it effect, for concededly it is a part of the contract. Without something more than the words of the order, it would be difficult to understand what the parties had in mind in so stipulating. It is argued that if the defendant wanted to condition its contract, as claimed, it should have so provided in the contract. But here we have a stipulation put into the order by plaintiff itself. If unable to fill the order or any part of it, was defendant not to be excused, and if so, upon what was the condition to depend? We think there is necessarily implied some condition on which delivery was to be excused. Defendant contends that the correspondence and the telephone conversation preceding the making and acceptance of the order will show what these conditions were. In view of the character of the order and its acceptance, we think defendant was entitled to have submitted to the jury all the correspondence preceding and leading up to the making of the contract as well as the other facts and circumstances surrounding the parties at the time of entering into the contract, so as to remove the ambiguity therein and any inconsistencies in its terms. These letters, as well as the telephone communication, when looked to as they are presented by defendant's bills of exception, disclose the fact that defendant had no bricks manufactured of the kind and quality designated in the order and did not expect to have any until accumulated in the manufacture of No. 1 blocks. Its business was not manufacturing No. 2 blocks, they were the by-

products, so to speak, of its number one production. It was thought that when defendant resumed work, it would be able to accumulate at the rate of one or two cars per week, and it specifically notified plaintiff that it could only guarantee to furnish No. 2 blocks as they accumulated.

These views of the contract and of the evidence offered by defendant and rejected by the trial court, do not make applicable the rule of law excluding evidence of prior or contemporaneous verbal contracts or promises intended to vary, contradict or explain the terms or consideration of a complete unambiguous written contract, the rule applied by the trial court in rejecting the proffered evidence. The only cases cited and relied on by counsel in support of its contentions and the rulings of the court below are: *Buena Vista Co.* v. *Billmyer,* 48 W. Va. 382, syl. 4; *Home Gas Co.* v. *Mannington Etc. Glass Co.,* 63 W. Va. 266, syl. 2; *Martin* v. *Monongahela Railroad Co.,* 48 W. Va. 542, syl. 2. These cases, while affirming the proposition that such evidence may not be admitted to vary the plain and ambiguous terms of a written contract, impliedly affirm what is laid down by other decisions that evidence of the character submitted may be admitted to explain and make clear the terms of a contract ambiguous and uncertain on its face. Where the character of the contract is such as the one involved here, the court will look at the subject matter thereof, the situation of the parties and the surrounding facts and circumstances, in aid of its proper construction, including the negotiations leading up to the contract, if that be necessary. *Raleigh Lumber Co.* v. *Wilson & Son,* 69 W. Va. 598, 603 and cases cited; *Elswick* v. *Deskins,* 75 W. Va. 109; *Hardman Lumber Co.* v. *Keystone Mfg. Co.,* 86 W. Va. 404, 103 S. E. 282.

These conclusions concerning the nature of the contract and the admissibility of defendant's evidence rejected, would render plaintiff's instructions number one and two, predicated on its theory that the letters introduced by it constituted the contract and the whole of the terms thereof, erroneous and inapplicable to the facts as they would have appeared with the rejected evidence before the jury.

On the trial the court rejected instruction number four proposed by defendant. This instruction was that plaintiff could

not recover upon the common counts in assumpsit. As the case was presented by the evidence before the jury, this instruction should have been given. The contract was executory; no part of it had been fulfilled; nothing was due the plaintiff except damages, if any, arising from the alleged breach of the contract. Counsel say that while the common counts were not available for recovery without the special count, they were proper to be considered along with the special count. This is not a correct statement of the law except in those instances where the suit involves something recoverable under the common counts as well as damages for a breach of an unexecuted contract. *Standard Fashion Co.* v. *Lopinsky,* 84 W. Va. 522, 101 S. E. 152.

We have now disposed of all the errors assigned and relied on except the denial of defendant's motion for a new trial. This motion, for the reasons assigned, we think, should have prevailed. We are of opinion that the judgment should be reversed.

*Reversed and remanded.*